IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| GREG MORELAND, | ) | Civil Action No. 4:08-3902-CMC-TER |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) | |
| Defendant. | ) | |

This is an action brought pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

**I. PROCEDURAL HISTORY**

Plaintiff, Greg Moreland, protectively filed applications for DIB and SSI on October 21, 2005, with an alleged onset of disability of July 2, 2004. (Tr. 64; 240). Plaintiff requested a hearing before an administrative law judge (ALJ) after his claims were denied initially and on reconsideration. (Tr. 45; 23, 24; 248, 252). ALJ Gerald F. Murray conducted a hearing on May 22, 2008, at which

1

plaintiff appeared with his counsel, Jon Benezette, and testified. (Tr. 256). A vocational expert (VE) also testified at the hearing.

On June 20, 2008, the ALJ issued a decision finding that plaintiff was not disabled because he could perform a limited range of unskilled light work that existed in significant numbers in the national economy. (Tr. 19-20). After the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 4), the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. Section 405(g). See 20 C.F.R. §§ 404.981 and 416.1481.[1] Plaintiff filed the instant action on December 1, 2008.

## II. FACTUAL BACKGROUND

As of his alleged onset of disability (AOD), plaintiff was forty-three years of age. (See Tr. 18). The ALJ found that he has a limited education and past relevant work as a construction worker/carpenter. (Tr. 18, 19). According to the ALJ, plaintiff alleged disability due to pain in his neck, back, and knees. (Tr. 15).

## III. DISABILITY ANALYSIS

In his brief before the Court, plaintiff argues that the Commissioner's findings are in error because the ALJ failed to properly:

1. evaluate plaintiff's credibility;

2. weigh medical opinions;

3. determine plaintiff's residual functional capacity;

---

[1] All of this Court's references to the Code of Federal Regulations (C.F.R.) are to the 2008 edition.

    4.       question the VE.

The Commissioner contends otherwise and urges that substantial evidence supports the determination that plaintiff was not disabled.

In his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since July 2, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*, 416.920(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, right knee medial meniscus tear, carpal tunnel syndrome, and blind since birth in left eye (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to unskilled work, with a sit/stand option, no more than occasional postural activities, occasional fine manipulation, and which can be performed with monocular vision.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 14, 1960 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (<u>See</u> SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 2, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-20).

Under the Social Security Act (the Act), 42 U.S.C. § 405(g), this Court's scope of review of the Commissioner's final decision is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether he applied the correct law. <u>Richardson v. Perales</u>, 402 U.S. 389 (1971); <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" is that evidence which "'a reasonable mind might accept as adequate to support a conclusion.'" <u>Richardson v. Perales</u>, 402 U.S. at 401 (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984). The Court's narrow scope of review does not encompass a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g); <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. See 20 C.F.R. §§ 404.1520 and 416.920. An ALJ must consider whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant has an impairment which equals a condition contained in the Act's listing of impairments (codified at 20 C.F.R. Part 404, Subpart P, Appendix 1); (4) the claimant has an impairment which prevents past relevant work; and (5) the claimant's impairments prevent him from any substantial gainful employment. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

Under 42 U.S.C. Section 423(d)(5), the plaintiff has the burden of proving disability, which is defined by Sections 423(d)(1)(A) and 1382c(a)(3)(A)[2] as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See also 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

---

[2]The regulations applying these sections are contained in different parts of Title 20 of the C.F.R. Part 404 applies to federal old-age, survivors, and disability insurance, and Part 416 applies to supplemental security income for the aged, blind, and disabled. Since the relevant portions of the two sets of regulations are identical, the citations in this report will be limited to those found in Part 404.

## IV. ARGUMENTS

Plaintiff argues that the ALJ erred in giving "little weight" to Dr. Ortolani's opinion (see Tr. 18), despite the governing principles. The ALJ reasoned that the doctor's opinions of plaintiff's abilities "progressively declined," but the treatment records failed to "document any significant changes *in the clinical findings*." (Id. (emphasis added)).

Although not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 524,527 (4th Cir. 1988); Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589. The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

A review of the record reveals the following conclusion by the ALJ with regard to the treating physician's opinion:

> As for the opinion evidence, Dr. Ortolani has provided several statements on the claimant's abilities. On August 9, 2005, Dr. Ortolani stated that the claimant was limited to the type of activities he could do, which was, "mainly a light duty, sedentary type occupation" (Exhibit 9F/5). Two months later, on October 18, 2005, Dr. Ortolani stated that the claimant's complaints were, "of a magnitude that really render him disabled from any type of gainful employment" (Exhibit 9F/4). On April 18, 2008, Dr. Ortolani completed a Physical Residual Capacity Questionnaire finding the claimant

6

capable of sitting 10 minutes at one time, standing 5 minutes at one time, sitting or standing/walking less than 2 hours total in an 8-hour workday, and requires 4 minutes of walking every 30 minutes. Dr. Ortolani reported that the claimant must use an assistive device when standing/walking. He also found the claimant needs to be able to shift positions at will, and would need unscheduled breaks. Dr. Ortolani restricted the claimant to lifting less than 10 pounds only rarely. He stated the claimant could: occasionally look down, turn head right or left, look up, and hold head in one position; and never twist, stoop, crouch/squat, or climb ladders or stairs. Dr. Ortolani limited the claimant's reaching, handling, or fingering to 10% of time during an 8-hour workday. He stated the claimant would likely miss more than four days per month from work as a result of his impairments (Exhibit 12F).

> The undersigned gives little weight to the opinions of Dr. Ortolani as they are inconsistent with his own treatment records and inconsistent with the medial evidence as a whole. Dr. Ortoloni's opinions of the claimant's abilities have progressively declined, yet his treatment records over time do not document any significant changes in the clinical findings. Many of the treatment notes state that the claimant is "doing about the same" and describe the claimant's pain as "moderate." Dr. Ortolani provided no explanation of the evidence relied on in forming the opinion stated in the Physical Residual Capacity Questionnaire.

(Tr. 18).

The ALJ gave little weight to Dr. Ortolani's opinions but gave substantial weight to the consultative examining physician, Dr. Barber. The ALJ stated as follows:

> The undersigned gives substantial weight to the opinions of Dr. Barber, who consultatively examined the claimant on three occasions, and found the claimant capable of performing work which is not inconsistent with light exertional demands. On January 25, 2006, Dr. Barber stated the claimant could be limited in walking and standing for long periods, could be limited in lifting and carrying heavy objects, and his symptoms could limit the claimant to activities that require the use of upper body movements and coordinated activities with hands. On August 3, 2006, Dr. Barber stated the claimant could lift and carry 20 pounds occasionally, 10 pounds frequently, stand 6 hours cumulatively in an 8 hour day, and walk 6 hours cumulatively in an 8 hour day. On February 20, 2008, Dr. Barber stated the claimant could be limited in walking and standing for long periods of time, could be limited in lifting and carrying heavy objects, could not walk without an assistive device, and had difficulty standing.

(Tr. 18).

7

However, a review of Dr. Barber's conclusions is not completely inconsistent with Dr. Ortolani's opinions. In fact, Dr. Barber's opinions are more supportive of Dr. Ortolani's opinions that inconsistent. Dr. Barber found that the plaintiff could be limited in walking and standing for long periods of times, has difficulty bending, could be limited in lifting and carrying heavy objects, and cannot walk without an assistive device.

Dr. Ortolani completed a residual functional capacity questionnaire finding that claimant must use an assistive device when standing/walking just as Dr. Barber found. Dr. Ortolani found plaintiff could never twist, stoop, crouch/squat, or climb ladders or stairs and limited his reaching, handling or fingering to 10% of time during an 8-hour workday. Dr. Barber concluded that plaintiff would be limited to activities that require the use of upper body movements and coordinated activities with his hands. Dr. Barber also concluded that plaintiff would be limited in lifting and carry heavy objects and would have difficulty standing. Further, a review of Dr. Barber's reports reveal that he also concluded plaintiff has difficulty bending and his report of August 3, 2006, finds plaintiff is unable to walk without difficulty, is unable to walk on his toes, heels, and is unable to squat. (Tr. 169, 215). A review of Dr. Barber's report also reveals that he found plaintiff had a decreased range of motion in the upper extremities due to pain and tight muscles.

Therefore, based on the findings and conclusions reached by both Dr. Barber and Dr. Ortolani, plaintiff is unable to squat, has trouble doing any bending, cannot perform activities that require the use of upper body movements and coordinated activities with his hands, trouble walking and standing, cannot walk without an assistive device, would be limited in lifting and carrying objects, and would be limited in walking and standing. There is not substantial evidence to support the ALJ's reasoning for discounting the treating physician's opinions. The ALJ stated that Dr. Ortolani's treatment notes

stated that plaintiff is "doing about the same" and described his pain as moderate. However, Dr. Ortolani never stated that plaintiff's condition had improved. Thus, it appears the ALJ took this statement out of context.

It is clear from the medical evidence plaintiff is in need of knee surgery, neck surgery, and hand surgery for carpal tunnel syndrome in both upper extremities, and cannot walk without an assistive device. This is undisputed by the record. As set out above, Dr. Barber's report does not contradict the treating physician's report but supports certain conclusions. It is noted that the Commissioner did not have Dr. Barber complete a residual functional capacity evaluation.

Based on a review of the entire record, the undersigned finds that there is not substantial evidence to support the ALJ's decision with regard to Dr. Ortolani's opinion and that the ALJ did not conduct a proper analysis as to the treating physician's opinion. Therefore, this case is remanded for the ALJ to reconsider the opinions of Dr. Ortolani in accordance with 20 C.F.R. §§ 404.1527(d)(2)(i-ii) and (d)(3)-(5) and Ruling 96-2

**<u>Credibility</u>**

Plaintiff next argues that the ALJ failed to properly evaluate his credibility. Plaintiff challenges the ALJ's finding that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his alleged symptoms] are not credible to the extent they are inconsistent" with the ALJ's residual functional capacity (RFC) assessment. (Tr. 15).

Under <u>Craig v. Chater</u>, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective

complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. at 34486.

The ALJ found at step one that plaintiff had impairments capable of producing the symptoms that he alleged and, accordingly, proceeded to step two. Plaintiff, however, complains that the ALJ failed to follow established procedures in performing this assessment and failed to provide specific explanations. The undersigned agrees.

In this case, a review of the hearing decision reveals that the ALJ found the following with respect to plaintiff's credibility after setting out the guidelines for analysis under Social Security Ruling 96-7:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of

10

> these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

(Tr. 15).

The ALJ found that the records from plaintiff's treating physician, Dr. Ortolani, did not support plaintiff's statements. The ALJ further stated that the doctor's opinions were "inconsistent with the medical evidence as a whole" (Tr. 18), but fails to demonstrate how this is so. However, Dr. Ortolani had noted that plaintiff had "significant" problems with his head and neck, complained of severe headaches and neck pain radiating into his upper extremities. Dr. Ortolani recommended surgery to decompress the herniated disk in his neck which produced stenosis. (Tr. 206). Plaintiff's bilateral carpal tunnel syndrome was characterized as "moderately severe" which was confirmed with electromyography and nerve conduction studies and positive Tinel and Phalen signs. (Tr. 206, 15, 17). His treating physician opined that without surgery on his neck and hands, plaintiff would not be able to perform gainful employment. (Tr. 206, 208). Plaintiff was treated with prescription medicines but was financially unable to pay for the surgeries. Two MRIs on plaintiff's right knee revealed a medial meniscus tear and moderate joint effusion. (Tr. 15, 114, 205). X-rays of the knee revealed osteoarthritis. Knee surgery was recommended by plaintiff was unable to afford the recommended surgery. It was noted by both the treating physician, Dr. Ortolani, and the consultive physician, Dr. Barber, that plaintiff could only walk with an assistive device, had pain, had trouble lifting, bending, sitting, standing, and walking. Furthermore, it is noted that plaintiff's September 2005 assessment from Vocational Rehabilitation concluded that plaintiff was "not eligible for vocational rehabilitation services" because his disability was "too severe . . . to result in an employment outcome." (Tr. 77).

11

After opining that plaintiff's prognosis indicated he was *not* "a candidate for employment," it referred him to the Social Security Administration. (Id.).

There is not substantial evidence to support the ALJ's findings with regard to plaintiff's credibility. The ALJ relied on Dr. Barber's reports to find that plaintiff could perform light work. However, a review of Dr. Barber's records do not support the ALJ's findings. On February 20, 2008, Dr. Barber listed plaintiff's impairments as cervical degenerative joint disease ("DJD"), with pain; lumbar DJD, with low back pain; right and left knee trauma/DJD; right and left carpal tunnel pathology; a history of shortness of breath, with choking; and right and left lower extremity varicose veins. (Tr. 214). Dr. Barber concluded that plaintiff could be limited in walking and standing for long periods of time; had difficulty standing; could be limited in lifting and carrying heavy objects; and could not walk without an assistive device. The ALJ found plaintiff not credible and that he could perform light work. However, light work requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. See 20 C.F.R. § 404.1567(b). As stated, the doctor's have recommended that plaintiff have knee surgery, neck surgery, hand surgery, and cannot walk without an assistive device. The ALJ's conclusions are not supported by the record.

The undersigned finds that the ALJ erred in his analysis of the plaintiff's credibility. The ALJ failed to rely or discuss the objective verification of plaintiff's complaints in assessing his credibility and determining his RFC. The ALJ attempted to rely on Dr. Barber's reports to undermine the opinions of the treating physician which is not supported by the record as set out above. Therefore, the reasoning cited by the ALJ is not supported by substantial evidence. Thus, the undersigned recommends that this case be remanded for proper consideration and explanation of findings as to

the plaintiff's subjective complaints considered with the medical evidence. On remand, the Commissioner can address these issues in accordance with Ruling 96-7p and Craig v. Chater, supra.

As it is recommended that this claim be remanded for proper analysis of the treating physician's opinion and plaintiff's credibility, the remaining issues will not be addressed as they are dependent on a proper analysis of these two issues.

## V. CONCLUSION

Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under Section 205(g), sentence four, and Section 1631(c)(3) of the Act, 42 U.S.C. Sections 405(g) and 1383(c)(3), it is,

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set out above to determine if plaintiff is entitled to benefits.

Respectfully submitted,

s/Thomas E. Rogers, III

February 12, 2010  
Florence, South Carolina

Thomas E. Rogers, III  
United States Magistrate Judge